WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Amanda V. Solie, *et al.*,

    Plaintiffs,

v.

Health Care@Home LLC, *et al.*,

    Defendants.

No. CV-19-05399-PHX-JJT

**ORDER**

At issue is Defendants Steve Cohn and Lillian Focken's Motion to Dismiss Second Amended Complaint (Doc. 39 Ex. A, "Mot."),[1] to which Plaintiffs filed a Response (Doc. 38, "Resp.") and Defendants filed a Reply (Doc. 41, "Reply"). Defendants Health Care@Home, LLC, Mark Forrest Cohn, and Susan Cohn (originally named as Jane Doe Cohn) joined the Motion (Doc. 28.) This Order refers to Steve Cohn, Focken, Mark Cohn, and Health Care@Home as "Moving Defendants."[2] However, the Court will not evaluate

---

[1] Moving Defendants filed their Motion initially at Doc. 26. After Plaintiffs responded, Defendants realized they had inadvertently omitted from the Motion their argument pertaining to Plaintiffs' unjust enrichment claim, Count 9, which Moving Defendants had included in their original motion to dismiss Plaintiffs' First Amended Complaint (Doc. 20). Moving Defendants' counsel obtained consent from Plaintiffs' counsel to file a Notice of Errata with a corrected Motion, which includes the argument regarding unjust enrichment. This is filed at Doc. 39.

[2] Susan Cohn is omitted from "Moving Defendants" as the term is used throughout the Order because none of the SAC's factual allegations are made against her. The Court presumes she is named as a party solely to encumber her and Mark Cohn's marital assets.

The Second Amended Complaint also names as Defendants Michelle Hosler, Dana Pierson, Rhianna Zastrow, Sanus Fieri Irrevocable Trust, Hosler Irrevocable Trust, and Waya, Inc. (the "Nonmoving Defendants"). Waya has been terminated as a party. (Doc. 46.) The other Nonmoving Defendants have not answered or otherwise responded to

on behalf of Mark Cohn or the Company the arguments made by Steve Cohn and Focken that require an analysis of individualized facts or allegations. For the reasons that follow, the Court grants in part and denies in part Moving Defendants' Motion.

I. **BACKGROUND**

Plaintiffs are four individuals who worked for Health Care@Home, LLC (the "Company") at different times and in different positions. Although each Plaintiff's factual allegations differ slightly, the essence of the Second Amended Complaint (Doc. 21 ("SAC")) is that the Company made untimely or incomplete payment of wages throughout their employment and breached promises related to the same.

According to the Complaint, Steve Cohn was the manager and only member of the Company between June 2013 and April 14, 2017. (SAC ¶¶ 23–24; *see* SAC Exs. A & B.) From April 14, 2017 through the remaining time period relevant to the SAC, Mark Cohn was listed as a member and manager of the Company, and Focken was listed as a member. (SAC ¶¶ 24–26; *see* SAC Exs. B, C & D.) Nonmoving Defendants were also all added as members or managers on or after April 14, 2017.

**Facts Specific to Amanda Solie**

Plaintiff Amanda Solie was employed as Director of Personal Care and Support Services for the Company from November 7, 2017 through January 1, 2018. (SAC ¶ 27.) Her salary was $80,000 and the Company also agreed to make particular reimbursements associated with her employment. (SAC ¶¶ 28–29.) "On or around December 4, 2017, the Company began making untimely or incomplete payment of wages and expense reimbursements to Solie" and "eventually" stopped paying her altogether. (SAC ¶¶ 31–32.) She was terminated on January 3, 2018. (SAC ¶ 33.) Solie filed a Complaint with the Labor Department of the Industrial Commission of Arizona, who eventually awarded her unpaid wages in the amount of $3,845.06, and trebled the amount to $11,535.18 plus 4.25% interest if Company failed to pay within 10 days of entry of final judgment. (SAC ¶¶ 34–

Second Amended Complaint, and several motions for default judgment are pending. This Order addresses only the facts as they pertain to Moving Defendants and, to the extent argued in the briefing, the claims against the same.

36). The Company paid nothing on the judgment. (SAC ¶ 38). Solie alleges she "was not paid either minimum wages (FLSA; Minimum Wage Act) or overtime wages (FLSA only) for a total of 96 hours during the works weeks spanning November 7, 2017 through January 3, 2018, and was not reimbursed costs of $152.90." (SAC ¶ 45.)

### **Facts Specific to Roseanne Barrera**

Plaintiff Roseanne Barrera was employed as Clinical Manager/Supervisor of the Company from March 15, 2017 through August 11, 2017, at a salary of $96,000. (SAC ¶¶ 46–47.) In June 2017, the Company started making incomplete or late wage payments to Barrera. (SAC ¶ 48.) When she demanded payment for her unpaid wages, the Company—on two occasions—provided her with checks that were later dishonored due to insufficient funds. (SAC ¶ 49.) Barrera eventually resigned in August 2017 after the Company stopped paying her wages altogether. (SAC ¶ 50.) At that time, the Company agreed to pay Barrera both her unpaid wages and for 53.32 hours of accumulated unpaid paid time off; the Company never paid either. (SAC ¶¶ 51–52.) On November 2, 2017, Barrera and the Company entered into a "Settlement Agreement" in which the Company agreed to pay Barrera $15,000 in a series of monthly payments. (SAC ¶ 53; *see* Ex. H.) The Company made only a partial payment of $1000 for the first payment, and never paid anything else. (SAC ¶¶ 54–55.) Barrera alleges she "was not paid either minimum wages (FLSA; Minimum Wage Act) or overtime wages (FLSA only) during the work weeks beginning on June 20, 2017 and continuing through the entire duration of her employment with the Company." (SAC ¶ 63.)

### **Facts Specific to Joseph Kovach**

Plaintiff Joseph Kovach was an Account Executive for the Company from May 27, 2017 through August 11, 2017 at a salary of $108,000. (SAC ¶ 66–67.) The Company began making untimely or incomplete wage payments around June 2017 and eventually stopped paying Kovach his wages altogether. (SAC ¶¶ 69–70.) After Kovach was terminated from his position as Account Executive on August 11, the Company asked if he would provide services as an Occupational Therapist Assistant at a rate of $50 per visit.

(SAC ¶¶ 66–67.) Kovach completed five visits in this role but was never paid for any of them. (SAC ¶ 68.) Kovach alleges he "was not paid either minimum wages (FLSA; Minimum Wage Act) or overtime wages (FLSA only) during the work weeks beginning in June of 2017 through August 2, 2017" and that he is "entitled to reimbursement for work luncheons totaling $978.98 and $515.05 in reimbursement for printed collateral related to his position with the Company." (SAC ¶ 75.)

### **Facts Specific to Alex Hatchett**

Plaintiff Alex Hatchett worked as an Occupational Therapist for the Company from January 2017 to October 2017. (SAC ¶ 76.) His rate of pay was $120 per visit for visits outside the East Valley and $90 per visit within the East Valley. (SAC ¶ 77.) The Company began making untimely or incomplete wage payments in March 2017 and eventually stopped paying Hatchett his wages altogether. (SAC ¶¶ 78–79.) Hatchett alleges "he was not paid either minimum wages (FLSA; Minimum Wage Act) or overtime wages (FLSA only) during the work weeks spanning January of 2017 through October of 2017." (SAC ¶ 85.)

### **Facts Relevant to All Plaintiffs**

In addition to the above factual allegations, the SAC alleges Plaintiffs' paychecks came from different sources, including company checks, direct deposit, and sometimes third-party vendors. (SAC ¶ 87.) After the Company failed to pay their wages, Plaintiffs made demands on the Company but were still never paid. (SAC ¶ 93.) "Mark Cohn told each Plaintiff numerous times both verbally and in writing that both he and the Company would pay all their wages." (SAC ¶ 94.) He made these promises until February 2018, at which time he ceased all communication with Plaintiffs. (SAC ¶ 96.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica*

*Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). On a Rule 12(b)(6) motion, Rule 8(a) governs and requires that, to avoid dismissal of a claim, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. ANALYSIS

Plaintiffs filed this action in state court on August 13, 2019, and filed their First Amended Complaint ("FAC") on September 6, 2019. Moving Defendants removed the action to this Court (Doc. 1) and filed a motion to dismiss (Doc. 20). Rather than respond to that motion, Plaintiffs filed the SAC later that same day. (Doc. 21.)

The SAC alleges 10 counts total, with each Plaintiff alleging each count against different Defendants, depending on who was a member of the Company during the alleged violations.[3] The following counts are alleged: (1) failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"); (2) failure to pay minimum wages under the FLSA; (3) failure to pay wages under the Arizona Wage Act ("AWA"); (4) failure to pay minimum wages under the Arizona Minimum Wage Act ("AMWA"); (5) breach of contract related to Mark Cohn's promises to pay Plaintiffs' wages; (6) breach of contract related to Barrera's Settlement Agreement; (7) breach of implied duty of good faith and fair dealing; (8) negligent misrepresentation; (9) unjust enrichment; and (10) alter ego. Moving Defendants move to dismiss all counts.

---

[3] For example, Solie and Kovach do not assert claims against Steve Cohn because he was no longer a member of the Company during the times either Plaintiff worked for the Company. (SAC ¶ 21.)

- 5 -

### A. Counts 3 & 7: Failure to Pay Wages under the AWA & Breach of Implied Duty of Good Faith and Fair Dealing

In their Response to Moving Defendants' present Motion, Plaintiffs ask the Court to dismiss Counts 3 and 7 without prejudice. (Resp. at 2 n.4.) Moving Defendants respond that these counts should be dismissed with prejudice. The Court agrees with Moving Defendants.

Plaintiffs have had ample opportunity to substantively respond to Moving Defendants' arguments regarding Counts 3 and 7 and have not done so. Counsel for Moving Defendants certify that on October 19, 2019, they notified Plaintiffs via letter of the defects in the FAC as required by LRCiv 12(c). (Doc. 20 at 1 n.1.) Moving Defendants later filed their first motion to dismiss and, as noted above, Plaintiffs then unilaterally filed the SAC instead of responding to that motion. (*See* Docs. 20, 21.) Moving Defendants certify that before they filed the present Motion, they again notified Plaintiffs that the SAC failed to address the issues or cure the defects raised in their October 19 letter and the first motion to dismiss. (Mot. at 2 n.1.)

The effect of all this is that Moving Defendants have been forced to expend resources on moving to dismiss the same counts several times, and Plaintiffs have still not addressed the merits of their arguments. To allow Plaintiffs to now dismiss these claims with an opportunity to raise them again down the line—after having had multiple chances to defend the viability of said claims—would manipulate the system and work an unfairness on Moving Defendants. Accordingly, Counts 3 and 7 are dismissed with prejudice as to Moving Defendants and without prejudice as to Nonmoving Defendants.

### B. Alter Ego Liability

Before the Court turns to the substance of the remaining counts, it must first address Count 10, the outcome of which will inform the Court's analysis of other counts. In Count 10, Plaintiffs seek to impose liability for the Company onto the "Individual Defendants" (Moving Defendants Steve Cohn, Mark Cohn, and Focken, and Nonmoving Defendants Hosler, Zastrow, and Pierson) under a theory of alter ego liability.

"[A]lter-ego status . . . exists when there is such a unity of interest and ownership that the separate personalities of the corporation and owners cease to exist." *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972). Arizona courts will disregard the corporate entity only if the plaintiff pleads facts sufficient to show that the corporation is the person's alter ego and that shedding the separate status is vital to preventing injustice or fraud. *Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010). Relevant factors to consider in determining the existence of an alter ego relationship include "payment of salaries and expenses" by the owner, an "owners' making of interest-free loans to the corporation," "commingling of personal and corporate funds," "diversion of corporate property" for personal use, and the "observance of formalities at corporate meetings," among others. *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195–96 (Ariz. Ct. App. 1994).

The SAC alleges "there is such a unity of interest and ownership" between the Individual Defendants and the Company that no separation between the two exists, and to treat them separately would work an injustice on Plaintiffs. (SAC ¶ 198–199.) More specifically, upon information and belief, the Individual Defendants (1) paid personal expenses from Company funds; (2) took or received improper distributions and/or payments from the Company; (3) co-mingled their personal funds with the Company funds (and the Company made no distinction between its own funds and the funds of the Individual Defendants); and (4) failed to keep proper corporate and payroll records for the Company. (SAC ¶¶ 193–197.) The SAC asserts the Company's inability to meet its payroll obligations so soon after it hired Plaintiffs supports these allegations.

Although the above allegations contain the hallmarks of boilerplate pleading, courts in this district and circuit permit alter ego theories to survive with similar factual allegations. *See, e.g.*, *Barba v. Seung Heun Lee*, No. CV 09-1115-PHX-SRB, 2009 WL 8747368, at *5 (D. Ariz. Nov. 4, 2009); *Whitney v. Wurtz*, 2006 WL 83119, at *2 (N.D. Cal. Jan. 11, 2006). And while the Court agrees with Defendants that it may not be *likely* that all six Individual Defendants engaged in the above pattern of behavior, discovery and

later motion practice will bear this out. For now, the allegations make alter ego liability plausible—the standard under Rule 8 and Supreme Court precedent. Plaintiffs' counsel are reminded, however, that each paper they submit to the Court, including the SAC, includes a certification that they sought credible information in determining the veracity of the contents and factual bases therein. *See* Fed. R. Civ. P. 11(b); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987).

Accordingly, Moving Defendants are not entitled to dismissal of the claims against the Company for which the law permits piercing of the corporate veil.

### C. FLSA and AMWA Claims

The FLSA has two major wage provisions. It requires employers pay (1) an hourly minimum wage that is set by statute and calculated according to the number of hours worked in a week, and (2) overtime wages at a rate of 1.5 times an employee's hourly wage for every hour worked over 40 hours in a week. *See* 29 U.S.C. § 206(a)(1) (minimum wage); 29 U.S.C. § 207(a)(1) (overtime); *see also Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1009–10 (9th Cir. 2011).

#### 1. Count 1: FLSA Overtime

Moving Defendants argue the SAC fails to state a claim under the FLSA overtime provisions because it does not clearly allege "*any time*, much less a specific workweek, in which Plaintiffs worked more than forty hours without being compensated for overtime hours." (Mot. at 5) (emphasis in original). The Court agrees.

The Ninth Circuit holds that, "to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014). Plaintiffs are not expected to allege "with mathematical precision" the amount of overtime compensation owed, but the more facts alleged regarding the number of hours worked, the length of an average workweek, and an estimated amount of overtime owed, "the closer the complaint moves toward plausibility." *Id.* at 645–46. At the very least, plaintiffs "must

be able to specify *at least one workweek* in which they worked in excess of forty hours and were not paid overtime wages." *Id.* (emphasis added).

Here, the SAC makes no such allegation. It merely states the Company stopped paying Plaintiffs their wages or made incomplete payments at various times. In an attempt to specify a week, the SAC alleges "Defendants first failed to pay them earned wages during the following weeks: (1) Solie – week of November 6, 2017, (2) Barrera – week of March 15, 2017, (3) Kovach – May 28, 2017, and (4) Hatchett – week of January 1, 2017." (SAC ¶ 108.) But this does not demonstrate Plaintiffs worked more than 40 hours during that week—or any other given workweek—and failed to receive overtime wages for that work. Accordingly, Plaintiffs fail to state a claim for FLSA overtime violations.

### 2. Counts 2 & 4: Minimum Wages

Plaintiffs' minimum wages claims are similarly deficient. The SAC alleges that "on or around" a certain date or month specific to each Plaintiff, the Company "began making untimely or incomplete" wage payments. (SAC ¶¶ 31, 50, 69, 78.) This is insufficient because it fails to identify a week in which their average hourly pay fell below the federal minimum wage of $7.25 for the FLSA, 29 U.S.C. § 206(A)(1)(C), or Arizona's minimum wage of $10 to $10.50, depending on the year, A.R.S. § 23-363(A)(1). Because minimum wages are calculated by averaging the hourly wage over the number of hours worked in a week, wage payments can be untimely or incomplete yet still satisfy minimum wage requirements. *See Maravilla v. Rosas Bros. Constr., Inc.*, 401 F. Supp. 3d 886, 896 (N.D. Cal. 2019).

In a similar vein, the SAC again alleges "Defendants *first* failed to pay them earned wages during the following weeks: (1) Solie – week of November 6, 2017, (2) Barrera – week of March 15, 2017, (3) Kovach – May 28, 2017, and (4) Hatchett – week of January 1, 2017." (SAC ¶ 139) (emphasis added). First, these dates conflict with the dates or months alleged throughout the rest of the SAC, making it difficult to discern the weeks during which the alleged violations occurred.[4] Second, even with the more particular workweeks

---

[4] For example, other sections of the SAC allege the Company *began* making untimely or incomplete wage payments to Solie on December 4, 2017; to Barrera on

- 9 -

identified in Paragraph 139, the SAC still fails to demonstrate Plaintiffs were paid below the minimum wage. Plaintiffs had salaries ranging from $80,000–$108,000 and rates of $50 to $120 per occupational visit. Thus, a failure to pay Plaintiffs' "earned wages" does not, in light of their higher salaries, translate into a failure to pay minimum wages. *See Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999) ("Because the salary, when averaged across the total actual number of hours worked, still paid more per hour than the minimum wage, [the defendants] complied with the FLSA's minimum wage requirements.").

Finally, the SAC contains general allegations that (1) the Company eventually stopped paying each Plaintiff his or her wages altogether, and (2) each Plaintiff "was not paid either minimum wages [] or overtime wages" for a specified period of time that ranged from three months (Barrera) to ten months (Hatchett). These allegations are too vague to state a claim for either minimum wages or overtime wages for the reasons the Court has already stated. *See Landers*, 771 F.3d at 646.

In sum, the SAC's lack of specificity and consistency fails to state a claim for violations under either the FLSA or the AMWA. The Court acknowledges this may be a function of the potential complications in keeping organized ten claims by four different plaintiffs against ten defendants. This, however, does not excuse Plaintiffs from satisfying the pleading requirements spelled out in *Landers* and its progeny. Nonetheless, because the Plaintiffs might save their overtime and minimum wage claims by providing more precise factual allegations, leave to amend shall be granted. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### 3. Employers under the FLSA and AMWA

Moving Defendants also argue the SAC does not adequately allege they were employers of Plaintiffs. An employer who violates FLSA minimum wage or overtime provisions is liable to affected employees, 29 U.S.C. § 216, as is an employer who violates the AMWA, A.R.S. § 23-364(G). Because the parties do not cite any cases interpreting the

---

June 20, 2017; to Kovach in June 2017; and to Hatchett in October 2017.

meaning of "employer" under the AMWA, the Court will look to case law interpreting the FLSA definition because the two statutes define the term similarly. *See* 29 U.S.C. § 203(d); A.R.S. § 23-362; *Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663-PHX-DWL, 2019 WL 7048773, at *24 (D. Ariz. Dec. 23, 2019).

An FLSA employer is an individual who exercises "control over the nature and structure of the employment relationship, or economic control over the relationship." *Lambert v. Ackerley*, 180 F.3d 997, 1012 (9th Cir. 1999). The Ninth Circuit applies a four-factor "economic reality" test that considers whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *See Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

Here, the SAC alleges that as members of the Company, Steve Cohn, Mark Cohn, Focken, Pierson, Hosler, Zastrow, Hosler Trust, Sanus Fieri Trust, and Waya "had control over the Company." They also "had the authority to hire and fire employees, supervise and control the work schedules or the conditions of the employment, determine the rate of pay and method of payment, and maintain employment records in connection with" Plaintiffs' employment. (SAC ¶¶ 41–42; 59–60; 71–72; 81–82.)

The analysis here is similar to that of alter ego liability under Count 10. That is, the SAC just barely puts forth enough allegations to make it plausible that Steve Cohn and Focken were Plaintiffs' "employers."[5] While discovery and summary judgment may ultimately reveal the unlikelihood that all nine member-Defendants had and exercised these authorities, this matter is currently in the pleading stage, and Plaintiffs' counsel has averred by signing the SAC that they have a good faith basis for alleging the above. *See* Fed. R. Civ. P. 11. Additional allegations regarding Mark Cohn strengthen the claim against him. For example, after each Plaintiff was terminated, Mark Cohn allegedly repeatedly promised that he and the Company would pay all of Plaintiffs' unpaid wages. He also signed the

---

[5] However, because Steve Cohn was no longer a member as of April 2014, he could not have been Solie's or Kovach's employer.

Settlement Agreement with Barrera as Chief Executive Officer of the Company. These demonstrate economic control over the employment relationships.

Accordingly, taking the allegations as true, the SAC asserts sufficient allegations to make it plausible that Moving Defendants Mark Cohn, Steve Cohn, and Focken were Plaintiffs' employers under the FLSA and AWMA.

### 4. Timeliness

Moving Defendants assert that Plaintiffs' FLSA and AMWA claims are mostly untimely. The statute of limitations for a claim under either is two years, but can be extended to three if a plaintiff demonstrates the defendant *willfully* violated the statutes. 29 U.S.C. § 255(a); A.R.S. § 12-364(H). Generally, in order to even reach the willfulness inquiry, the Court would have to first determine whether there was a statutory violation in the first instance, and here the Court determined above that Plaintiffs failed to state a claim under the FLSA or AMWA. However, because the Court granted Plaintiffs leave to amend their claims, in the interest of efficiency it will evaluate Moving Defendants' untimeliness argument.

An employer acts willfully when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). The SAC alleges generally that "[e]ach Defendant knew that the Company had an obligation to pay earned wages to Plaintiffs" under the FLSA and the AMWA and "intentionally did not pay those wages despite these obligations." (SAC ¶ 97.) This alone is enough at the pleading stage. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (finding dismissal inappropriate on statute of limitations grounds when the Complaint alleged the employer's violations were "deliberate, intentional, and willful"); *see also* Fed. R. Civ. P. 9(b) ("[C]onditions of a person's mind may be alleged generally."). Beyond that, the SAC also alleged that during her employment, Barrera demanded payment of her unpaid wages but continued to not be paid. After being confronted by Barrera, the Company gave her dishonored checks—twice. Mark Cohn also repeatedly promised to pay Plaintiffs their outstanding wages. Together,

these allegations sufficiently demonstrate Defendants' knowledge that their conduct violated the FLSA or AMWA or reckless disregard of the same.

### D. Count 5: Breach of Contract – Mark Cohn's Promise to Pay

All four Plaintiffs allege that Mark Cohn promised he would pay their wages after they were terminated or left the company. These promises were repeatedly made orally and in writing until February 2018. Moving Defendants argue Count 5 is untimely under A.R.S. § 12-541(3), which provides a one-year statute of limitations for a "breach of an oral or written employment contract." A.R.S. § 12-541(3). Plaintiffs argue the limitations periods of either A.R.S. § 12-548 (six years for breach of written contract) or A.R.S. § 12-543 (three years for breach of oral promise to pay a debt) applies.[6]

Arizona courts broadly construe the term "employment contract" under § 12-541(3) and have "interpreted it as applying to almost all disputes between an employer and employee." *Blood Sys., Inc. v. Roesler*, 972 F. Supp. 2d 1150, 1155 (D. Ariz. 2013) (citing *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 183 P.3d 544, 549 (Ariz. Ct. App. 2008)). The definition includes "all contracts defining specific responsibilities of the employer to the employee" and any agreement related to "the nature, conditions, or duration" of employment. *Redhair*, 183 P.3d 547–49.

Plaintiffs contend that despite this broad interpretation, Mark Cohn's promises cannot be "employment contracts" because they were made *after* Plaintiffs' employment terminated. (Resp. at 15.) However, Plaintiffs fail to cite any cases to support this temporal distinction. Consistent with other decisions from this district, the Court finds that a promise or assurance to pay wages owed after the employment relationship ends is still an employment contract because it defines the responsibilities of the employer and extends a term or condition of the employment.

In *Gillard v. Good Earth Power AZ LLC*, two plaintiffs sued their former employer to recover wages the employer had "deferred" throughout the plaintiffs' employment.

---

[6] Plaintiffs also cite to A.R.S. § 12-550, arguing a three-year limitations period for written promises to pay applies. (Resp. at 16.) However, that section of the statute imposes a four-year limitations period for "actions other than for recovery of real property for which no limitation is otherwise prescribed."

No. CV-17-01368-PHX-DLR, 2019 WL 1280946, at *6 (D. Ariz. Mar. 19, 2019). The court found that, under the discovery rule, the limitations period could theoretically be extended beyond the date of termination based on the employer's "post-termination assurances that [the plaintiffs] would be 'made whole.'" *Id.* On the other hand, the court in *Lytikainen v. Schaffer's Bridal LLC* held that the employer's post-termination promises to pay the plaintiff's unpaid salary did not extend the limitations period under § 12-541(3) because the plaintiff knew of the employer's breach by the time she was terminated. 409 F. Supp. 3d 767, 777 (D. Ariz. 2019). While these cases arrived at different conclusions regarding application of the discovery rule, they share an underlying legal premise: post-termination promises to pay wages already owed are "employment contracts" under § 12-541(3). Thus, even taking the more generous view that the limitations period began to run in February 2018 after Mark Cohn's last promise, Plaintiffs' claims are still untimely because they are based on employment contracts subject to a one-year limitations period.

### E. Count 6: Breach of Contract – Barrera's Settlement Agreement

Moving Defendants seek dismissal of Count 6 for similar reasons. Namely, they argue the Settlement Agreement is not a settlement agreement at all because it lacks consideration, and is therefore not a written contract subject to the six-year limitations period under A.R.S. § 12-548. (Reply at 7.) They argue it is, at most, a promise to pay wages and assert the one-year statute of limitations for employment contracts applies. *See* A.R.S. §§ 12-541(3). Beyond pure argument, however, Moving Defendants offer no support—statutory, case law, or otherwise—for their position. Without more, the Court cannot conclude at this early stage that the signed document was not in fact a contract or settlement agreement. Evaluation of the terms of the document, intent of the parties, and validity of the agreement is more appropriate for a later stage of litigation.

Although Barrera also offers little substantive response and simply reasserts the six-year statute of limitations applies, the Court finds Defendants have failed to demonstrate expiration of the limitations period for Barrera's breach of contract claim. Accordingly, the Court will not dismiss Count 6 as untimely at this stage. *See Cervantes v. Countrywide*

*Home Loans*, 656 F.3d 1034, 1045 (9th Cir. 2011) (holding courts may dismiss a complaint only "[i]f the running of the statute is apparent on the face of the complaint"). As this claim is alleged against only the Company, it survives against the other Moving Defendants only to the extent Plaintiffs prove alter ego liability.

### F. Count 8: Negligent Misrepresentation

Moving Defendants did not address Plaintiffs' claim for negligent misrepresentation in their Motion; in their Reply, Steve Cohn and Focken state only that the claim was not made specifically against them. (Reply at 11.) It was, however, brought specifically against Mark Cohn, a joining Defendant, who made no individualized argument for dismissal of this claim or any others. Count 8 therefore survives as to Mark Cohn. Further, Plaintiffs alleged negligent misrepresentation against the Company. The claim thus survives against Steve Cohn and Focken to the extent the law imputes liability for an LLC's negligent misrepresentation onto its alter ego members.

### G. Count 9: Unjust Enrichment

As stated in footnote 1, Moving Defendants inadvertently omitted from their Motion their argument regarding Plaintiffs' unjust enrichment claim. (*See* Docs. 26, 39.) "Upon realizing this error, counsel for the Moving Defendants sought consent from Plaintiffs' counsel to file a Notice of Errata with a corrected Motion adding the argument regarding unjust enrichment." (Reply at 7.) Moving Defendants filed their corrected Motion as Exhibit A at Doc. 39. The parties agreed that Plaintiffs would have additional time to revise their Response in order to respond to the unjust enrichment argument. (Doc. 39 at 1.) However, Plaintiffs never filed a revised Response and consequently did not address the arguments raised by Moving Defendants. Failure to respond to a motion may be deemed consent to the Court's granting of that Motion. LRCiv 7.2(i). Accordingly, the Court dismisses Plaintiffs' unjust enrichment claim.

## IV. CONCLUSION

Plaintiffs failed to state a claim for Counts 1, 2, and 4, but are granted leave to amend. Failure to cure the defects will result in dismissal with prejudice. Count 5 is

dismissed with prejudice as to Moving Defendants on statute of limitations grounds. Counts 3, 7, and 9 are dismissed with prejudice as to Moving Defendants. Counts 6 and 8 survive Moving Defendants' Motion to Dismiss. The Court finds that Count 10 sufficiently alleges alter ego liability for the Company against Moving Defendants Steve Cohn, Mark Cohn and Focken, as well as Nonmoving Defendants Zastrow, Pierson, and Hosler. Thus, any claims that survive as to the Company also survive as to the Individual Defendants who worked for the Company during the requisite time periods, to the extent the law permits alter ego liability.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendants Steve Cohn and Lillian Focken's Motion to Dismiss Second Amended Complaint filed at Doc. 26, which Defendants Mark Forrest Cohn, Susan Cohn, and Health Care@Home LLC joined at Doc. 28.

**IT IS FURTHER ORDERED** that Plaintiffs have 14 days from this Order to file their Third Amended Complaint.

Dated this 10th day of April, 2020.

Honorable John J. Tuchi
United States District Judge